IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

DAVID JOHN HANSON,

           Plaintiff,                  OPINION AND ORDER

v.

                                               19-cv-892-wmc

ANDREW M. SAUL, Commissioner of
Social Security,

           Defendant.

Pursuant to 42 U.S.C. § 405(g), plaintiff David John Hanson seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. In this appeal, Hanson contends that the administrative law judge ("ALJ") erred in: (1) assessing the weight to be afforded the psychological consultative examiner, Rebecca Angle, Ph.D.; (2) accounting for his moderate limitations on concentration, persistence and pace; (3) assessing the weight to be placed on the lifting, pushing and pulling restrictions recommended by his treating physician, Dr. Steven Klein; and (4) failing to consider his hearing loss in formulating his RFC. Because the court finds that the ALJ adequately addressed each of the areas of concern raised in Hanson's brief, the court will affirm the Commissioner's denial of benefits.

BACKGROUND[1]

A. **Plaintiff**

With a birth date of December 19, 1964, plaintiff David John Hanson was 50-years-old at the time of his disability onset date, placing him in the "individual closely approaching advanced age" category. 20 C.F.R. § 404.1563. Hanson has at least a high school education, is able to communicate in English, and has past work experience as a plumber. Hanson last engaged in substantial gainful activity in October 2015, coinciding with his alleged disability onset date of October 13, 2015.

Hanson applied for social security disability benefits on October 14, 2015, with a date last insured of December 21, 2020. He claimed disability based on: adjustment disorder with depressed mood; myofascial muscle pain; periscapular pain; osteoarthrosis, shoulders, bilateral glenohumeral degenerative joint disease; and bilateral carpal tunnel syndrome. (AR 63.)

B. **ALJ Decision**

ALJ Diane S. Davis held an evidentiary hearing via videoconference on August 1, 2018, at which plaintiff appeared with counsel. As of the alleged onset date, the ALJ found that Hanson had the following severe impairments: degenerative joint disease of the bilateral shoulders; degenerative disc disease of the lumbar spine; adjustment disorder with depressed mood; generalized anxiety disorder; and social anxiety disorder. (AR 19.) In addition to the list of severe impairments, the ALJ also considered plaintiff's hearing loss

---

[1] The following facts are drawn from the administrative record, which can be found at dkt. #7.

(and other impairments not relevant to this appeal) to be non-severe. Specifically, the ALJ reasoned "[w]hile the claimant's hearing loss has lasted longer than 12-months, it is correctible with hearing aids, which the claimant reports provided a 'decent benefit' (12F/25). Additionally, for low frequencies, the hearing loss was mild (1F/80)." (AR 19-20.)

Next, the ALJ considered whether any impairment or combination of impairments met or medically equaled any of the listings. Material to this appeal, the ALJ specifically considered whether plaintiff's mental impairments met the relevant listings. As part of that analysis, the ALJ considered the "paragraph B" criteria, finding that Hanson had: (1) mild limitations in adapting or managing oneself and in understanding, remembering or applying information; and (2) had moderate limitations in interacting with others and in concentrating, persisting, or maintaining pace ("CPP"). (AR 20-21.) As for Hanson's CPP limitation, the ALJ explained:

> The claimant alleges difficulty with concentration and staying on task (9E/3, 12F/37). However, the claimant was consistently able to attend to demands of his interviews and the hearing and showed good attention span and concentration. Additionally, he reported being able to maintain concentration while watching television for up to two hours at a time (10F/12, 12F/2, 12F/43, 6F/3). He prepares his own meals, cleans his home, mows the lawn, plows the driveway, shops, and manages money (6F/3, 6E/3). Additionally, the claimant spent time working to fix up vacation homes to get them sale ready (10F/3). However, during a concentration test at the consultative examination, he was unable to spell the wor[d] *world* backward (6F/3). This evidence supports a moderate limitation in this domain.

(AR 21.)

In crafting Hanson's residual functional capacity ("RFC"), the ALJ found that Weber could perform light work, "except he can only occasional[ly] reach overhead bilaterally with five pounds." (AR 22.) To address his mental limitations, the ALJ's RFC also provided:

> He can understand, remember, can carry out simple, routine tasks, make simple work-related decisions, and adapt to routine workplace changes, commensurate with unskilled work . . . . He can tolerate routine interaction with supervisors and co-workers at such levels, but with only occasional contact with the public.

(*Id.*)

In crafting the RFC, the ALJ acknowledged Hanson's statements that he "can sit for 15 minutes, stand for 15 minutes, can lift no more than 5 pounds overhead, no more than 10 pounds for repetitive motion, and 20-30 pounds close to his body (7F/2)." (AR 23.) The ALJ also noted Hanson's complaint about shoulder tightening and cramping, and that he had mental difficulties "with social situations, concentration, and tolerating stress." (*Id.*) However, the ALJ determined that while the medical record provided some support for Hanson's claimed disabilities, other parts of the record undermined it. In particular, with respect to his "repeated complaints of chronic shoulder and back pain since the alleged onset date," the ALJ acknowledged that the medical notes reflected "significant improvement with medication and exercise" and that the providers "routinely found him to be in no distress." (AR 23 (citing record pages).) With respect to his shoulder pain, the ALJ also noted that (1) x-rays showed the presence of "articular sclerosis with spurring of the humeral head, bilateral glenoid dysplasia with osteophytes, and progressive arthrosis of the right glenohumeral joint (1F/3, 1F/5)," resulting in Hanson having "range of motion

4

deficits involving his shoulder"; and (2) while Gabapentin helped with his pain, Hanson also claimed that it made him dizzy and affected his memory. (*Id.*) With respect to his back pain, the ALJ noted that his spine impairment has been "treated with trigger point injections as well as a nerve block." (*Id.*)

Generally with respect to his complaints of pain, the ALJ explained that after Hanson stopped working as a plumber, his pain reduced -- specifically finding that shortly after he stopped working his heavy exertional level job as a plumber, Hanson "was able to comfortably do a full squat, had negative Romberg and straight leg tests, and no tenderness in the lumbar spine." (AR 23.) While treated for pain in November 2016, the ALJ also noted that this was around the same time plaintiff worked to ready his vacation home for sale, further that "[o]nce the claimant stopped the heavy work that aggravated his symptoms, his pain became more manageable." (AR 24 (citing records).) Moreover, the ALJ found that Hanson has declined any surgical interventions, never reported to an emergency room for care, and declined to engage in a variety of exercises recommended by his providers. Finally, the ALJ determined Dr. Steven Klein provided the 5-pound work restriction limitations at Hanson's request, which was around the same time that Hanson asked another doctor to complete a crossbow permit for him, something at odds with his claim of disabling shoulder limitations.

As for needing an assistive device, the ALJ acknowledged Hanson's claim that he used a shopping cart to support his arms, but found nothing to indicate that this was medically necessary. As for Hanson's other claimed physical limitations, the ALJ pointed to Hanson's own account that he can: sit reading the paper or using the computer for

5

hours at a time; can sit on a lawn mower; enjoys walking for two hours at a time on hilly terrain and around big box stores; can stand while cooking, cleaning, doing laundry and shopping; can bend over when doing laundry; and was able to hang sheet rock and tile a floor at his vacation home.  (AR 24-25.)  As a result, the ALJ found that while Hanson's "range of motion is impaired in his shoulders, he has normal, 5/5 strength," as well as "intact reflexes and sensation."  (AR 25.)

The ALJ also expressly considered Hanson's mental impairments in crafting his RFC, specifically citing the December 2015 psychological consultative examination.  In particular, while noting "a tearful affect and awkward smiling that did not match the content of the conversation," Hanson also exhibited "logical thought process, was oriented, and showed a good fund of knowledge."  (AR 23.)  Moreover, although the ALJ acknowledged that his medical providers have "observed psychological signs of anxious or depressed mood," with anxiety related to social situations and stress due to being in pain, which accounted for "his conservative treatment history that consisted primarily of medication management" and attendance at some counseling between August 2016 and 2017, at which time, treatment notes found that Hanson's "anxiety has been improving and he has learned stress coping mechanisms."  (*Id.*; *see also* AR 25 (reporting improvement to providers as his treatment progressed; last reporting anxiety at the end of 2017).)  Finally, the ALJ noted that:  Hanson's providers routinely found he was not in "acute distress during appointments"; he reported that "working is itself a stress reliever" and "going out into the community" regularly; and he engages socially with family and "keeps up with friends online."  (AR 25.)

6

The ALJ further found that Hanson's "reported difficulties with memory and concentration must . . . be balanced against the longitudinal mental status examinations describing him as alert, oriented, and cooperative, able to attend to the demands of interviews and hearings, and showing good attention span and concentration." (AR 25 (citing records).)  Reviewing these records and plaintiff's account of his activities, the ALJ concluded that Hanson "is able to understand, remember, and complete simple, routine tasks, make simple work-related decisions and adapt to routine workplace changes." (AR 25-26.)

The ALJ next considered the medical opinion evidence, placing great weight on the state agency consultants' opinions that Hanson could perform light work, while limited bilaterally in his ability to push/pull and restricted to five pounds or less on overhead reaching, emphasizing that these opinions were consistent with Hanson's own reports about his activities.  (AR 26.)  The ALJ also placed great weight on the opinions of the state agency psychological consultants that Hanson was only moderately limited in carrying out detailed instructions, in maintaining attention and concentration for extended periods, and in interacting appropriately with the general public.  (*Id.*)  The ALJ explained that this opinion was "afforded great weight because it provides some consideration for the claimant's history of anxiety and mental distress, but balances these symptoms against the evidence of conservative treatment, improvement with medication, and the claimant's reports of going out to crowded home improvement stores as a stress-reliever." (*Id.*)

As for the treating physicians, the ALJ considered the March 2015 restrictions by Dr. Steven Klein, limiting Hanson to repetitive lift/push/pull of 10 pounds and overhead

7

work of 5 pounds. (AR 26.) The ALJ placed little weight on these opinions. More specifically, the ALJ adopted the overhead work limitation, but concluded that limiting Hanson to 10 pounds for lifting, pushing and pulling was not supported by the medical record, including Dr. Klein's own records. Acknowledging the "significant treatment relationship between the claimant and Dr. Klein," the ALJ nevertheless discounted his opinion because: (1) his opinion appears to be based solely on concerns about range of motion and there were no tests to support the 10 pounds restriction; (2) a month after he wrote that restriction, Hanson reported to his physical therapist that he had engaged in yard work, including cutting down a tree; and (3) Hanson also continued working as a plumber, and even after stopping working in October 2015, still worked around his own house and on two vacation homes, readying them for sale. (AR 27.) Accordingly, the ALJ found that "a limitation to 'some' push/pull is appropriate," but that was accommodated by the restriction to light work, as well as the five-pound occasional overhead bilateral reach limitation. (*Id.*)

Finally, the ALJ considered the psychological evaluation of Rebecca Angle, Ph.D., in December 2015, ultimately placing little weight on her conclusions about Hanson's ability to work because "the limitations listed are more significant than her exam findings would support." (AR 27.) In discounting Angle's opinion, the ALJ relied on: (1) the fact that she had no treatment history with Hanson, meaning her assessment was "based only on a snapshot of the claimant's functioning on that given day and mostly based on his own self reporting of functioning"; and (2) internal inconsistencies in her report, including that Hanson "reported being able to concentrate for two hours at a time" and "attend[ing] to

8

activities of daily living in a timely manner," which undermined Angle's opinion that Hanson would be "significantly limited" in maintaining "concentration and work pace." The ALJ also faulted Angle for not explaining what "significantly limited" meant. (AR 27-28.) In the end, the ALJ reasoned that she accommodated Hanson's depression and anxiety by placing restrictions on "task complexity, concentration, persistence, and pace, and interaction with the public." (AR 28.)

Relying on her weighing of these medical opinions and testimony from the vocational expert ("VE"), the ALJ concluded that while Hanson could not perform his past relevant work as a plumber, but there were other jobs in the national economy in significant numbers that he could perform, including cleaner, housekeeping, photocopy machine operator, and mail clerk. (AR 28-29.)

### C. Medical Record

In his brief, plaintiff also emphasizes the following, additional material from Hanson's medical record. On August 31, 2015, Dr. Maslowski noted that "Dave struggles every day--cannot sleep comfortably, cannot interact with children, frequently coughs in response to pain. He is also partially deaf." (AR 455.) On September 8, 2015, Dr. Baker, noted that "[o]ver the last year, he has struggled significantly with bilateral shoulder pain, periscapular pain, and myofascial pain in the upper back/trapezius region," and his work duties contribute to his pain. (AR 454.) Dr. Baker further noted that he has become "increasingly irritable and depressed over the last several months," and that he has trouble sleeping. (*Id.*)

On December 22, 2015, Angle credited Hanson's report on his back and shoulder problems, depression, difficulty sleeping and withdrawal from social situations, although his wife reported that since he started antidepressants, his mood and interactions with others has improved. (AR 557.) Angle herself noted "significant hearing loss," a tearful affect and awkward smiling. (AR 558.) Based on her one-time examination, Angle believed that Hanson met the criteria for anxiety related and somatic disorders, concluding that he

> [h]as the ability to understand, remember and carry out simple instructions that might be given to him. His ability to interact comfortably with supervisors and coworkers would be significantly limited. His ability to maintain his concentration and work pace would be significantly limited as would his ability to manage day-to-day work stress.

(AR 560.)

On January 8, 2016, Dr. Allen evaluated Hanson's shoulder pain, describing Hanson's report of a "constant ache and sharp pain with movement," but also noting that he had not had any surgeries or hospitalizations for his shoulder pain, nor for his reports of carpal tunnel syndrome and low back pain. (AR 563.) Dr. Allen also described Hanson's reports of limitations in sitting, standing, walking and lifting. Finally, on examination, Dr. Allen found "tenderness over the anterior rotator cuff tendons," limitations in movement, and "tenderness from T1 to T6" of the thoracic spine. (AR 565.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Accordingly, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As noted at the outset of this opinion, the plaintiff here raises four challenges to the denial of benefits on appeal, which the court will address in turn.

**I. Treatment of Psychologist Angle's Consultative Examination Opinion**

Hanson contends that the ALJ erred in failing to place weight on Angle's opinion that Hanson was significantly limited with respect to his abilities to: (1) interact comfortably with supervisors and coworkers; (2) maintain concentration and work pace; and (3) manage day-to-day work stress. Hanson further argues that if the ALJ had placed more weight on those opinions, then "such limitations would likely preclude competitive employment." (Pl.'s Opening Br. (dkt. #10) 11 (citing SSR 85-15, 1983-1991 Soc. Sec. Rep. Serv. 343, 1985 WL 56857 (S.S.A. 1985)).) In making this argument, Hanson faults the ALJ for relying on the state agency consultants' opinions over that of Dr. Angle's,

11

explaining that the regulations provide that "[a]s a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination." (*Id.* at 13.)[2]  From this, Hanson argues that "[g]iving more weight to the state agency psychologists cannot be a 'good reason' for rejecting an examining, independent source," and that the ALJ must provide a "good explanation" for discounting or rejecting the opinion of the agency's own examining physician. (*Id.* at 14.)

Plaintiff's account of the *standard* for assessing an examining physician's opinion is accurate, but he ignores that the ALJ actually engaged in the required analysis and explanation. Specifically, the ALJ noted that Psychologist Angle served as an examining consultant, but had no treatment history with Hanson, both of which are fair observations. (AR 27.)  In fairness, the ALJ's statement that Angle's opinion was "based only on a snapshot of the claimant's functioning on that given day and mostly based on his own self reporting of functioning" *could* be interpreted as inappropriately discounting subjective symptoms, which would be especially troublesome with respect to mental health assessments. *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019).  Read in context, however, the ALJ's statement more accurately reflects her concern that Angle's opinion is tied to Hanson's account on that day, while *also* recognizing other evidence demonstrating

---

[2] Plaintiff also assumes that "significantly limited" equates to "substantial loss of ability" as contemplated by the regulations. Yet as the Commissioner points out, one can reasonably question if this is a fair reading of Angle's report. (Def.'s Opp'n (dkt. #12) 7.) Having concluded that the ALJ provided a good explanation for discounting Angle's opinion, the court need not reach this issue.

that antidepressants had over time improved "his moods and overall functioning." (AR 27.)

In addition, the ALJ pointed to inconsistencies between Angle's finding that he was significantly limited in concentration, work pace and managing day-to-day stress, and Hanson's own account as described in Angle's report that he was able to "concentrate for two hours at a time and attend to activities of daily living in a timely manner." (*Id.*)  Plus, Angle's mental status examination of Hanson appears to be normal, other than noting some tearfulness during the examination and an inability to spell the word "world" backward. (AR 558-59.)  In describing his "functional information," Angle also indicated no concerns with concentration, persistence and pace, other than needing assistance washing his hair, which more likely is due to some physical limitations than a mental health issue. (AR 559.)  Based on this, the court concludes that the ALJ provided ample explanations for discounting Angle's opinion as to significant limitations in concentration, work pace and ability to manage day-to-day stress, to which this court must defer.

## II. Treatment of Moderate Limitations in CPP in RFC

Next, plaintiff faults the ALJ's formulation of his RFC to address her finding that Hanson suffers from moderate limitations in CPP.[3]  As detailed above, the RFC provided:

> He can understand, remember, can carry out simple, routine tasks, make simple work-related decisions, and adapt to routine workplace changes, commensurate with unskilled work . . . .  He can tolerate routine interaction with supervisors and

---

[3] Relatedly, plaintiff also argues that the ALJ should have provided limitations which conveyed Angle's finding of "significant limitations in concentration, persistence or pace," but given the court's previous finding that the ALJ did not err in discounting that opinion, it need not consider this challenge further.

>> co-workers at such levels, but with only occasional contact with the public.

(AR 22.)

Relying on now well-established case law in the Seventh Circuit, plaintiff contends that these restrictions are insufficient to account for his CPP imitations, rendering both the RFC formulation and, as a consequence, opinions by the vocational expert deficient. *See, e.g., O'Connor-Spinner v. Astrue*, 627 F.3d 614, 617 (7th Cir. 2010) (ALJ should refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do"); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." (citation and quotation marks omitted)).

As plaintiff's counsel is well aware, however, the Seventh Circuit has carved out various, commonsense exceptions to the general *O'Connor-Spinner* standard, including that "an ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see also Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010) (holding that an ALJ may rely on the opinion of "a medical expert who effectively translated an opinion regarding the claimant's mental limitations into an RFC assessment"); *Rankila v. Saul*, No. 18-CV-406-WMC, 2019 WL 4942110, at *3 (W.D. Wis. Oct. 8, 2019) (providing overview of Seventh Circuit cases describing this exception).

Here, state agency psychological consultant Kyla King, Psy.D., opined in her review of Hanson's medical record that he "would generally be able to focus to complete tasks of 2-3 steps but may have more difficulty with more complex tasks." (AR 74.) Similarly, upon reconsideration, state agency psychological consultant Karen Towers, Ph.D., stated in her report that: "Cl[aiman]t is able to sustain the mental demands associated with carrying out simple routine tasks over the course of a routine workday / workweek within acceptable attention, persistence, pace tolerances, [but is u]nable to do so for moderately to highly complex/detailed tasks requiring sustained concentration." (AR 89.) Based on these assessments, the ALJ reasonably relied on the findings of medical experts to craft an RFC that addressed his moderate limitations in CPP and other mental health issues. As such, the court must reject this basis for remand as well.

## III. Assessing Dr. Klein's Restrictions

Next, Hanson contends that the ALJ failed to consider adequately the March 2015 opinion of Dr. Steven Klein, an orthopedic surgeon and treatment provider, that Hanson was "limited to lifting of five pounds, pushing and pulling of five pounds and had limitations of reaching overheard." (Pl.'s Br. (dkt. #10) 24.)[4] Plaintiff further argues that if the ALJ had adopted Klein's limitations, Hanson would have been restricted to sedentary work, which would have rendered him disabled under the regulations given his age at the alleged onset date. (Pl.'s Br. (dkt. #10) 24.)

---

[4] Klein also limited Hanson to overhead reaching, but there is no dispute that in formulating the RFC, the ALJ built in a restriction that limited Hanson to overhead reaching only occasionally.

15

An ALJ who does not give controlling weight to the opinion of a claimant's treating physician must offer 'good reasons' for declining to do so." *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010) (citing 20 C.F.R. § 404.1527(d)(2)).  Generally, the opinions of a claimant's treating physician are "give[n] more weight" because he or she is "likely to be the medical professional[ ] most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." 20 C.F.R. § 404.1527(d)(2) (2011).  Specifically, if an ALJ chooses not to give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistent and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2019).

As an initial matter, in a March 2015 treatment note, Dr. Steven Klein examined plaintiff for revaluation of his shoulder pain, noting that he had not seen him for two years. (AR 526.)  This medical appointment occurred approximately eight months before he stopped working, also his alleged disability onset date of October 13, 2015.  During the appointment, Hanson expressed concerns about his ability to continue work as a plumber and asked Dr. Klein to "write restrictions for him," with Klein noting that "[a]t his request I wrote him a restriction of 5-pounds lift, push, pull overhead." (*Id.*)  In that same note, Dr. Klein also stated that Hanson's shoulder pathology was "fairly minimally symptomatic." (*Id.*)

16

Critically, as the ALJ recognized in her opinion, approximately three weeks after Hanson's alleged disability onset date, Dr. Klein further wrote on November 9, 2015, an additional restriction, which limited him to "repetitive lift/push/pull 10 lbs; limit overheard work to 5 lbs." (AR 555.) Accordingly, the ALJ relied upon Dr. Klein's November 2015 stated limitation, which strikes the court as eminently reasonable in light of its one-month proximity to Hanson's alleged onset date. Moreover, limiting Hanson to 10 pounds for *repetitive* lifting, pushing or pulling appears entirely consistent with the definition of light work. *See* 20 C.F.R. §§ 404.1567(b), 404.967(b) (defining light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds").

Putting that issue aside, the ALJ also offered good reasons for rejecting Klein's restriction, even assuming it were incompatible with light work. As detailed above, after acknowledging the treatment relationship, the ALJ discounted Klein's opinion because: (1) the medical opinion appears to be based solely on concerns about range of motion, and there were no tests to support the 10 pounds restriction;[5] (2) a month after Dr. Klein wrote the restriction, Hanson reported to his physical therapist that he had engaged in yard work, including cutting down a tree; and (3) Hanson also continued working as a plumber and

---

[5] Plaintiff faults the ALJ for relying on the lack of testing in discounting Klein's opinion, but then relying on the state agency consultants' opinions, which similarly involved a lack of testing. Critically, as the Commissioner explains, the state agency reviewers' opinions were less extreme. Moreover, the ALJ reasonably relied on the lack of objective medical testing to support a more extreme restriction, especially in light of her reliance on inconsistencies between Dr. Klein's own notes -- that the shoulder pathology was "fairly minimally symptomatic" (AR 26) -- and inconsistencies between that limitation and other evidence in the record -- namely, Hanson's own account of his physical abilities around that time.

even after he stopped working in October 2015, still worked around his own house *and* on two vacation homes, readying them for sale. (AR 27.) As such, the court rejects this basis for remand as well.

### IV. Evaluation of Hearing Loss

Finally, as described above, the ALJ determined that Hanson's hearing loss was not a severe impairment, reasoning that:

> While the claimant's hearing loss has lasted longer than 12-months, it is correctible with hearing aids, which the claimant reports provided a 'decent benefit' (12F/25). Additionally, for low frequencies, the hearing loss was mild (1F/80).

(AR 19-20.) Nonetheless, plaintiff contends that the ALJ should have considered his hearing in considering the three examples of jobs that the VE opined Hanson could still perform. Plaintiff also directs the court to the Selective Characteristics of Occupations, a companion publication to the DOT, indicating that each of the three jobs has a noise capacity of 3, which is moderate, the midpoint on a scale from very quiet to very loud. (Pl.'s Br. (dkt. #10) 31.)

However, given the record evidence showing that Hanson's hearing loss was correctible by use of hearing aids -- coupled with the evidence plaintiff provides that these three jobs require only moderate noise capacity -- there is no basis for finding error in the ALJ's decision to not include this non-severe impairment in crafting Hanson's RFC. As such, the court rejects this basis for remand as well.

ORDER

IT IS ORDERED that:

1) The decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff David John Hanson's application for disability and disability insurance benefits and supplemental security income is AFFIRMED.

2) The clerk's office is directed to enter judgment in defendant's favor.

Entered this 13th day of August, 2020.

                                      BY THE COURT:

                                      /s/
                                      _____
                                        WILLIAM M. CONLEY
                                        District Judge